**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No. 24-CR-00574 (BAH)** |
| **v.** | |
| **BRANDON SMITH,** | **Sentencing Date:  April 30, 2026** |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

On six occasions over the course of six months, Brandon Smith (the Defendant), trafficked deadly weapons into the D.C. community, conspiring to sell at least nine firearms to a person prohibited by federal law from possessing a firearm. The Defendant did so while still himself on probation for a violent felony involving a firearm. The Defendant repeatedly engaged in these sales despite the purchaser indicating that he was also still serving a criminal justice sentence. Nor was the Defendant deterred when the purchaser stated that he needed the firearms because he was "at war" after his cousin had been killed.

Illegal firearms fuel violence, endangering the lives of citizens and law enforcement. The Defendant chose to disregard the potentially grave consequences of his criminal conduct. The Defendant's actions demonstrate a serious disregard for the safety of others and to the community. Accordingly, the Government respectfully requests that the Court impose a sentence at the middle of the guidelines range: **136 months of imprisonment**, followed by 3 years of supervised release.

## BACKGROUND

*The Offense*

Beginning on or about November 30, 2023, and continuing through at least on or about May 30, 2024, within the District of Columbia and elsewhere, the Defendant and co-conspirators

formed an agreement with the goal of trafficking firearms in and affecting interstate or foreign commerce. Further, the Defendant and his co-conspirators knew or had reasonable cause to believe that their trafficking conduct would result in the Defendant's receipt of firearms from another person and that the Defendant knew or had reasonable cause to believe that such receipt would constitute a felony.

Specifically, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") opened an investigation into the Defendant in October 2023 after being alerted by a confidential source that the Defendant, who was still on supervised probation at the time, was actively soliciting the sale of firearms to individuals, including those with prior felony convictions. The Defendant would text photographs of firearms to individuals to advertise their availability for sale.

On or about November 30, 2023, within the District of Columbia, the Defendant arranged or facilitated a sale with Individual-1 that resulted in the Defendant selling a firearm, specifically a black Glock, G22GEN4, .40 caliber pistol, to Individual-1 for $900. During the sale, the Defendant indicated that his associate, who he had expected to bring the firearm for sale, failed to appear. Instead, the Defendant sold his own personal firearm to Individual-1, and told Individual-1 that the Defendant would have to purchase a replacement firearm for himself following the sale.



*The Defendant selling a firearm to Individual-1 on November 30, 2023*



*The firearm sold by the Defendant on November 30, 2023*

Further, on or about December 12, 2023, the Defendant met with Individual-1 in the District of Columbia for an arranged sale of two firearms. At the time of the sale, the Defendant indicated that he had not been able to make contact with his supplier, and that he again would instead have to sell Indiviudal-1 just his own personal firearm, rather than the two firearms as arranged. The Defendant sold his firearm, specifically a Walther, P99 9-millimeter pistol, to

Individual-1 for $900. The Defendant told Individual-1 that, as a result of the sale, he would have to purchase two firearms, one to replace the firearm that he personally carried and a second firearm for Individual-1 to purchase.



*The firearm sold by the Defendant on December 12, 2023*

In early January, the Defendant and Individual-1 spoke by telephone on multiple occasions about arranging another firearms transaction. The Defendant indicated that he could sell Individual-1 an AR-style firearm. During one of the calls, Individual-1 told the Defendant that he needed the firearms, because he was "at war right now. I need everything. I need everything I can get right now." Later on the same call, Individual-1 reiterated, "I'm at war for real though, bro. I'm really at war. My little cousin got killed. So, I'm at war."

On January 10, 2024, the Defendant again met with Individual-1 in the District of Columbia for an arranged sale of a firearm. On that date, Individual-1 purchased a Stoeger STR-9C 9-millimeter pistol from the Defendant for $900.



*The firearm sold by the Defendant on January 10, 2024*

On May 10, 2024, the Defendant met with Individual-1 for another firearm transaction in Washington, D.C. The Defendant also arranged for Co-Conspirator 1, a firearm supplier, to attend the meeting with him and Individual-1. On May 10, 2024, Co-Conspirator-1 sold Individual-1 two firearms, specifically a tan Sig Sauer (SIG-ARMS) P320/M18 9mm Pistol bearing Serial Number M18-107837 and a black RUGER SR9C 9mm pistol, in exchange for $1,500 in cash. As depicted in the photograph below, the serial number on the black Ruger handgun was obliterated.





*Firearms purchased by Individual-1 on May 10, 2024*

On May 16, 2024, the Defendant met Individual-1 in Washington, D.C. That same day, the

Defendant also arranged for Co-Conspirator-1 to meet with him and Individual-1. On May 16,

2024, Co-Conspirator-1 sold Individual-1 three firearms, specifically a two-tone Taurus G3C 9mm

pistol bearing serial number ACL532975, a two-tone Smith and Wesson SD40 .40 caliber pistol,

and an HS Produkt (IM Metal), XDM, .40 caliber pistol, in exchange for $2,500 in cash.



*Firearms Purchased by Individual-1 on May 16, 2024*

On May 30, 2024, the Defendant again met with Individual-1 in Washington, D.C., for an arranged firearm transaction. Ultimately, Individual-1 purchased a Glock 22 semiautomatic firearm from the Defendant for $950.



*Firearm sold by the Defendant on May 30, 2024*

At the time of the above sales, the Defendant knew or had reason to believe that the conduct necessitated his receipt and possession of the firearms from another, and that such receipt constituted a felony. Indeed, on one occasion, when the Defendant mentioned the possibility of traveling to Virginia to complete a firearms sale, Individual-1 responded, "Fuck no, I'm locked down on the fucking . . . I'm on a permit . . . . I'm taking a chance coming to this bitch." The Defendant responded, "I'm on papers, too." In addition, Individual-1 told the Defendant he needed the firearms because Individual-1 was "at war" and his cousin had just been killed. The Defendant also remarked on several occasions that selling the firearms to Individual-1 required the Defendant

to obtain new firearms for himself.

The firearms listed above were manufactured outside of the District of Columbia, and therefore had traveled in and affected interstate commerce. Further, Individual-1 traveled from outside of the District of Columbia to make the purchases.

October 26, 2024 Arrest[1]

At approximately 6:00 p.m. on October 26, 2024, law enforcement officers with the Metropolitan Police Department (MPD) commenced a traffic stop for a car parked in a zone marked "No Standing or Parking Anytime" on the west side of 16th Street SE, just south of Marion Berry Avenue SE, in the District of Columbia.

MPD Sergeant Possinger approached the driver side of the car and requested that the occupants roll down both front windows. As MPD Investigator Choi approached the passenger side of the car, the Defendant rolled down both front windows. The Defendant was seated in the front passenger seat, and no one was in the driver's seat of the car. Investigator Choi observed a half-empty bottle of Don Julio tequila at the Defendant's feet and an open can of Natural Light beer in a cup holder in the center console. He also observed a satchel-style bag at the Defendant's feet.

Investigator Choi ordered the Defendant to exit the car. Investigator Choi then removed one of the open containers of alcohol from the car and turned over the satchel bag. Inside an open compartment of the satchel bag, a firearm was immediately visible to Investigator Choi. Upon further inspection, the satchel bag also contained a bank card bearing the Defendant's name in one compartment, as well as a wallet containing the Defendant's government-issued identification card

---

[1]    The Defendant's arrest for possession of a firearm on October 26, 2024, did not stem from the ATF's trafficking investigation, but from an unrelated traffic stop initiated by MPD.

in another compartment.

The firearm was recovered and identified as a Glock Model 19x 9 mm handgun bearing serial number BVCV801. One round was chambered, and an additional 16 rounds were in the magazine. The gun was equipped with a magazine with the capacity to hold at least 17 rounds. The recovered firearm and ammunition had been transported in and affected interstate commerce.



*Firearm recovered in the Defendant's bag on October 26, 2024*

Throughout the entirety of the above-described conduct, from November 30, 2023, through October 26, 2024, the Defendant knew that he had been convicted in D.C. Superior Court case number 2014-CF3-021721 of Robbery and Possession of a Firearm during a Crime of Violence on February 9, 2016, and sentenced to imprisonment for 24 months and 60 months, respectively, as well as supervised release. In addition, the Defendant knew that he had also previously been convicted in D.C. Superior Court Case number 2013-CF3-004887 of Attempt to Commit Robbery on June 24, 2013, and was sentenced to imprisonment for 14 months and supervised release for 3 years.

10

*Procedural History*

The Defendant was indicted on December 18, 2024, by a federal grand jury on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).[2]

The Defendant was indicted via a Superseding Indictment on February 13, 2025, by a federal grand jury on six counts: Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Counts One through Five) and Conspiracy to Commit Trafficking in Firearms in violation of 18 U.S.C. § 933(a)(3) (Count Six).

On January 9, 2026, the Defendant pleaded guilty to Count Six of the Superseding Indictment pursuant to a plea agreement. The Government agreed to request that the Court dismiss the remaining counts of the Superseding Indictment at the time of sentencing.

## **APPLICABLE LAW**

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will

---

[2]    The Defendant was initially charged for the conduct underlying Count One of this case in D.C. Superior Court case number 2024 CF2 10887. The Superior Court case was dismissed without prejudice following the Defendant's initial appearance in federal court in this matter.

ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

*Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
(i) issued by the Sentencing Commission . . .; and
(ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –
(A) issued by the Sentencing Commission . . . and
(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies

broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The applicable Guidelines are contested in this matter, as the parties disagree whether two specific offense characteristics are applicable: U.S.S.G. § 2K2.1(b)(4)(B)(i) (obliterated serial number) and U.S.S.G. § 2K2.1(b)(6)(C) (receipt of two or more firearms by an individual under a criminal justice sentence or who intended to use the firearms illegally).[3] The estimated calculations in the Presentence Investigation Report (PSIR) are consistent with the Government's calculations.[4]

---

[3]    The plea agreement identified the issues as disputed by the parties, and the Defendant reserved the right to "litigate the number of points applicable under U.S.S.G. §§ 2K2.1(b)(4)(B)(i) and 2K2.1(b)([6])(C) at the sentencing phase." *See* ECF No. 38 at 2-3 (The plea agreement used the Sentencing Guidelines sections from the 2024 Manual and identified the second disputed Guidelines section as U.S.S.G. § 2K2.1(b)(5)(C)).

[4]    The Government notes that, while the Defendant reserved the right to litigate these specific offense characteristics, the Defendant did not object to the calculations of the PSIR, which were consistent with the Government's calculations.

*Uncontested Issues*

Calculations regarding the Defendant's criminal history are not in dispute. The parties and the United States Probation Office (USPO) agree that the Defendant has six Criminal History Points and therefore falls within Criminal History Category III. *See* ECF No. 38 at 4; *see also* PSIR at ¶ 48.

The parties and the USPO further agree that the Base Offense Level is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B) because the Defendant is convicted of 18 U.S.C. § 933(a)(3). *See* ECF No. 38 at 2-3; *see also* PSIR at ¶ 29.

The parties and the USPO also agree that a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(1) is appropriate because the relevant conduct involved ten firearms.[5] *See* ECF No. 38 at 2-3; *see also* PSIR at ¶ 30.

*The Parties' Disputes*

A.  U.S.S.G. § 2K2.1(b)(4)(B)(i)

The parties disagree as to whether a four-level increase applies pursuant to U.S.S.G. § 2K2.1(b)(4)(B)(i), which states if, "any firearm had a serial number that was modified such that the original information is rendered illegible or unrecognizable to the unaided eye the cross reference under U.S.S.G. § 2K2.5(c) applies to the Defendant's conviction . . . increase by **4** levels."

B.  U.S.S.G. § 2K2.1(b)(6)(C)

The parties further disagree as to whether a five-level increase applies pursuant to U.S.S.G. § 2K2.1(b)(6)(C), which states that if the Defendant:

---

[5]    Nine firearms were sold to the ATF confidential informant as part of the Defendant's firearms trafficking conspiracy. An additional firearm was discovered in the Defendant's possession during the arrest on October 26, 2024.

14

(i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (II) was under a criminal justice sentence at the time of the offense; or (III) intended to use or dispose of the firearms unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received two or more firearms as a result of inducing the conduct described in clause (i), increase by **5** levels.

The Defendant acknowledges that, if the specific offense characteristic set out in U.S.S.G. § 2K2.1(b)(6)(C) does not apply, the Defendant would instead receive a two-level increase under U.S.S.G. § 2K2.1(b)(6)(A), because the Defendant "was convicted under 18 U.S.C. § 933(a)(2) or (a)(3)." *See* ECF No. 38 at 3 (citing U.S.S.G. § 2K2.1(b)(5)(A)).

### *Defendant's Calculations*

Thus, under the Defendant's calculations, the Defendant has an adjusted offense level of 26:

| BOL | 20 | 2K2.1(a)(4)(B) |
|---|---|---|
| 10 firearms | +4 | 2K2.1(b)(1) |
| 933(a)(2) or (a)(3) | +2 | 2K2.1(b)(6)(A) |
| *Total* | *26* | |

*See* ECF No. 38 at 3. The Defendant would then receive a three-level reduction under U.S.S.G. § 3E1.1 for his acceptance of responsibility. *See id.* Thus, with a Criminal History Category of III and an Offense Level of 23, the Guidelines sentencing range would be 57 to 71 months of imprisonment as argued by the Defendant. *See id.* at 4.

### *Calculations of the Government and the PSIR*

The Government and the U.S. Probation Office calculate the Defendant's total offense level as 33:

| BOL | 20 | 2K2.1(a)(4)(B) |
|---|---|---|
| 10 firearms | +4 | 2K2.1(b)(1) |
| Obliterated Serial Number | +4 | 2K2.1(b)(4)(B)(i) |
| Receipt of two or more firearms by an individual under a criminal justice sentence or who intended to use the firearms illegally | +5 | 2K2.1(b)(6)(C) |
| *Total* | *33* | |

*See* ECF No. 38 at 2; *see also* PSIR at ¶ 36. The Defendant would then receive a three-level reduction under U.S.S.G. § 3E1.1 for his acceptance of responsibility. Thus, with a Criminal History Category of III and an Offense Level of 30, the Guidelines sentencing range is 121 to 151 months of imprisonment. *See* ECF No. 38 at 4; *see also* PSIR at ¶ 104. Additionally, the PSIR reflects a Guidelines range of not more than three years of supervised release. *See* PSIR. at ¶ 106.

## ARGUMENT AS TO APPLICABLE GUIDELINES

A. U.S.S.G. § 2K2.1(b)(4)(B)(i)

The application of the four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(C) is clear. A photograph of the Ruger sold as part of the Defendant's conspiracy to traffic firearms on May 10, 2024, clearly indicates that the serial number was modified such that it was not legible to the unaided eye:



Further, Commentary No. 8 to U.S.S.G. § 2K2.1(b)(6)(C) makes clear that the Defendant's state of mind is immaterial to this Specific Offense Characteristic:

> 8.    Application of Subsection (b)(4).-
>
> . . .
>
> (B)    Defendant's State of Mind.—Subsection (b)(4)(A) or (B)(i) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had a serial number that was modified such that the original information is rendered illegible or unrecognizable to the unaided eye.

Therefore, the Court should apply the four-level increase under U.S.S.G. § 2K2.1(b)(6)(C), because a firearm involved in the offense had a serial number that was modified such that it is not legible.

B.  U.S.S.G. § 2K2.1(b)(6)(C)

The specific offense characteristic of 2K2.1(b)(6)(C) also applies to this conviction for multiple reasons.

The conspiracy to commit trafficking in firearms involved the Defendant, who himself was under a criminal justice sentence at the time of the offense, obtaining and receiving multiple firearms for the purpose of selling those firearms illegally. *See* ECF No. 39. The Defendant repeatedly sold his own personal firearm to Individual-1 while stating to Individual-1 that the Defendant would have to contact a firearms supplier to replace it. *See id.* ("Mr. Smith also remarked on several occasions that selling the firearms to Individual-1 required Mr. Smith to obtain new firearms for himself."). Throughout the conspiracy, the Defendant also obtained multiple firearms in furtherance of his conspiracy to illegally traffic the firearms. This is also admitted by the Defendant in the Statement of Offense: "Further, Mr. Smith and his co-conspirators knew or had reasonable cause to believe that their trafficking conduct would result in Mr. Smith's receipt of firearms from another person and that Mr. Smith knew or had reasonable

18

cause to believe that such receipt would constitute a felony." So, the Defendant's own receipt of multiple firearms in furtherance of the conspiracy satisfies 2K2.1(b)(6)(C) for multiple reasons – the Defendant was both an individual who received two or more firearms who "was under a criminal justice sentence at the time of the offense" and "intended to use or dispose of the firearms unlawfully[.]"

The conspiracy for which the Defendant was convicted involved the sale of 9 firearms on 6 occasions to Individual-1. Individual-1 was also under a criminal justice sentence at the time. The Defendant's awareness of the fact that Individual-1 was under a criminal justice sentence was made clear during an exchange admitted to by the Defendant in the Statement of Offense: "Mr. Smith mentioned the possibility of traveling to Virginia to complete a firearms sale, Individual-1 responded, 'Fuck no, I'm locked down on the fucking . . . I'm on a permit . . . . I'm taking a chance coming to this bitch.' Smith responded, 'I'm on papers, too.'" *See* ECF No. 39. Therefore, the facts demonstrate that the Defendant knew or had reason the believe that the individual receiving firearms "(II) was under a criminal justice sentence at the time of the offense[.]"

In addition, the parties agreed in the Statement of Offense that, during the course of the repeated purchases of firearms from the Defendant, "Individual-1 told Mr. Smith he needed the firearms because Individual-1 was at war and his cousin had just been killed." Accordingly, the Defendant knew or had reason to believe that the individual receiving firearms "(III) intended to use . . . the firearms unlawfully[.]"

Therefore, the five-level increase of the specific offense characteristic set out in 2K2.1(b)(6)(C) applies here.

### THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government requests that the Court sentence the Defendant to 136 months'

19

imprisonment, followed by 3 years of supervised release. This sentence – at the middle of the applicable Guidelines' range – reflects the nature of this offense, accounts for the Defendant's criminal history, and provides adequate deterrence to the Defendant and others in the community. The sentence is particularly warranted given the significant danger presented by the repeated acquisition of firearms for the purpose of selling them to felons who the Defendant had reason to believe intended to use them for violent and unlawful purposes.

I.     **The Nature and Circumstances of the Defendant's Offense.**

The nature and circumstances of the offense are incredibly serious and warrant a lengthy period of incarceration as reflected in the Guidelines range. The Defendant, who is prohibited from possessing firearms under federal law and was on probation, engaged in a conspiracy to repeatedly acquire firearms and then advertise them for sale to other felons within D.C.

While the offense involved the Defendant repeatedly possessing deadly firearms, this was not a mere possessory offense. The defendant's conduct trafficking firearms in D.C. multiplied his risk to the safety of the community by ensuring that deadly weapons would be placed in the hands of the most dangerous individuals. A firearm is a deadly weapon. It has the ability with a single pull of the trigger to end a life. A firearm can escalate a mundane disagreement or a petty offense into a deadly encounter. And the reason law enforcement targets the possession of firearms prior to the commission of a crime is because once an individual makes the decision to produce a firearm and pull the trigger, law enforcement is powerless to intervene. The nature of the trafficking in firearms makes the Defendant responsible not just for the danger of his own possession of a deadly weapon, but also for the deadly effects of each individual who was sold a firearm. This danger was not abstract to the Defendant here. He sold firearms to Individual-1 despite being told the firearms were being purchased because he was "at war."

The danger of firearms trafficking was made clear by the Department of Justice's comprehensive analysis of firearms trafficking published in 2024, which indicated that nearly sixty percent of identified end users of trafficked firearms were convicted felons, nearly thirty percent were a known gang member or associate, and more than one in five end users were a drug trafficker. *See* NATIONAL FIREARMS COMMERCE AND TRAFFICKING ASSESSMENT (NFCTA): FIREARMS TRAFFICKING INVESTIGATIONS – Volume Three at Part VI, page 13 (*available at* https://www.atf.gov/firearms/docs/report/nfcta-volume-iii-part-vi/download). Indeed, shortly before the Defendant's conduct in the instant case, Congress had recently recognized the danger of such conduct by passing new statutes targeting and enhancing the penalties for unlawful firearms trafficking beyond those for possession. *See* June 11, 2024 Press Release: Justice Department Secures More Than 500 Prosecutions Under New Firearms Statutes Enacted by Bipartisan Safer Communities Act (*available at* https://www.justice.gov/opa/pr/justice-department-secures-more-500-prosecutions-under-new-firearms-statutes-enacted#:~:text=The%20new%20statutes%2C%2018%20U.S.C.,to%2015%20years%20in%20prison).

In this case, the Defendant repeatedly carried a deadly weapon in our community and was engaged in providing similar deadly weapons to others. His ready access to firearms, and his willingness to not only possess, but to sell firearms, despite being legally prohibited from doing so because of his prior felony convictions, is compelling evidence of the need for a lengthy term of incarceration.

In sum, this was a dangerous offense justifying an extended term of incarceration, as reflected in the Guidelines range.

**II.**   **The History and Characteristics of the Defendant.**

The Defendant's history demonstrates the need for a significant sentence. The Defendant has a lengthy criminal history that includes convictions involving violence and a prior crime involving a firearm.

The Defendant was first convicted as an adult in 2011 for Simple Assault in D.C. Superior Court case number 2011 CMD 007750, after he punched a woman "for no apparent reason." *See* PSIR at ¶ 43. He pleaded guilty and was initially sentenced to a fully suspended 180 days of incarceration. *See id.* His probation was revoked on July 13, 2012, and he ultimately served 173 days of incarceration. *See id.*

The Defendant was convicted of Attempted Robbery on June 25, 2013, in D.C. Superior Court case number 2013 CF3 004887. *See id.* at ¶ 44. In that matter, the Defendant, along with five other men, beat a man by punching and kicking him. *See id.* The Defendant then searched the victim's pocket and removed $100 in cash. *See id.* The Defendant pleaded guilty and was sentenced to 14 months of incarceration with 9 months of the sentence suspended, 14 months of probation, and 3 years of supervised release. *See id.* On January 23, 2015, the Defendant's probation was revoked. On February 12, 2016, the Defendant was sentenced to serve the full 14 months of incarceration with three years of supervised release. The Defendant's term of supervised probation for the 2013 conviction ended on August 23, 2024.

While released on probation for the 2013 Attempted Robbery, the Defendant committed Robbery and Possession of a Firearm during a Crime of Violence in D.C. Superior Court case number 2014 CF3 021721. *See id.* at ¶ 45. The Defendant and two other men tied up two victims at gunpoint, robbed, and beat them in the home of one of the victims. *See id.* The Defendant pleaded guilty and was sentenced to 60 months of incarceration and 5 years of supervised release

for Possession of a Firearm during a Crime of Violence, and 24 months of incarceration and 3 years of supervised release for Robbery. *See id.* The Defendant's term of supervised probation ended on September 30, 2024. *See id.* According to the PSIR, the Defendant stated he had no remorse for his actions when interviewed for his presentence report in that case. *See id.*

The Defendant's criminal conduct is not explained or mitigated by his upbringing. The Defendant was raised primarily by his mother and his basic needs were met. *See id.* at ¶ 57. He did not experience any abuse or neglect at his home. *See id.* at ¶ 58. The Defendant's mother told USPO that the Defendant "chose a different road. He made those choices. He can't blame anyone else. It was those people he was hanging around. He gave up on himself. I did all I can do for him." *Id.* at ¶ 59.

The Defendant committed the instant offense despite personal experience being directly affected by gun violence. The Defendant told USPO that he was shot in 2010 when he was the victim of a robbery. *See id.* at ¶ 67. The PSIR notes that the Defendant had previously reported that he suffered the gunshot wound when he was engaged in a gunfight regarding a disagreement. *See id.* at ¶ 70.

Nor can the Defendant's actions be explained or mitigated by any mental health condition. The Defendant has never suffered from or been treated for any mental or emotional health problems. *See id.* at ¶ 71.

The Defendant admitted to some drug use, including alcohol, marijuana, Percocet, and Xanax, but denied the use of any other drugs even experimentally. *See id.* at ¶¶ 74-79. The PSIR notes that the Defendant's account of his substance use is inconsistent with prior records obtained. *See id.* ¶ 83.

The Defendant's history and characteristics – a substantial criminal record involving

violence and prior possession of a firearm with repeated failures to comply with release conditions – justify a term of substantial imprisonment within the Guidelines range.

### III.   The Need for the Sentence Imposed.

The requested sentence of 136 months is sufficient but not greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from the Defendant possessing and trafficking firearms in D.C. for a significant period of time. It is also necessary to promote the Defendant's respect for the law. The Defendant has evidenced the need for such a lengthy sentence given his repeated history of committing violent and dangerous crimes while still on probation for a previous offense. That is true for the instant offense, in which he engaged in a firearms trafficking conspiracy while still on supervised probation. In addition, the Defendant previously indicated that he felt no remorse following his conviction for a violent robbery involving a firearm. Thus, a Guidelines sentence, while lengthy, is necessary to protect the public from the crimes of the Defendant and to instill a respect for following the law.

The sentence also provides general deterrence to similar criminal conduct: it will signal to the community that the unlawful trafficking of firearms to felons who are barred from possessing them is a deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for the Defendant to reflect on the serious nature of his crimes.

The Defendant's criminal history demonstrates that he has previously repeatedly committed violent and dangerous criminal conduct while on release or probation. Here, he was not dissuaded from the illegal possession and trafficking of firearms on multiple occasions despite being on probation for a prior violent felony involving a firearm. Instead, the Defendant chose, repeatedly, to place deadly weapons in the hands of criminals he had every reason to believe

intended to use them to harm others. A significant period incarceration is necessary to accomplish the goals of sentencing, and the Government's requested sentence of 136 months of incarceration followed by 3 years of supervised release is a reasonable one.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 136 months of incarceration, followed by three years of supervised release.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By:    */s/ Brendan M. Horan*
Brendan M. Horan
Special Assistant United States Attorney
N.Y. Bar No. 5302294
601 D Street NW
Washington, DC 20579
(202) 730-6871
Brendan.Horan@usdoj.gov